UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GLENN L. MARTIKEAN,

    Plaintiff,

v.                                                                              Case No. 5:11cv343/MP/CJK

DR. A. GUZMAN, M.D., Clinical
Director, and EDEN ABAD, Mid-
Level Practitioner,

    Defendants.
_____/

REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court on defendants' motions to dismiss (docs. 49, 63), to which plaintiff has responded in opposition (docs. 54, 67). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration, the undersigned concludes that the motions should be granted and the case should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, commenced this action on July 25, 2011, by filing a civil rights complaint under 28 U.S.C. § 1331 in the Northern District of Texas. (Doc. 1). The case was transferred to this court on October 24, 2011. (Doc. 7). Pending before the court is plaintiff's third amended complaint (doc. 22), in which plaintiff asserts various claims against Dr. Alfredo Guzman and Nurse Practitioner Eden Abad based on alleged inadequate medical

treatment received at Federal Correctional Institution Marianna ("FCI Marianna").[1] (Doc. 22, p. 2).

According to plaintiff, he arrived at FCI Marianna on September 12, 2007, "with a small lesion on the bridge of his nose that started to bleed . . . and would frequently bleed thereafter."  (Doc. 22, p. 6).  Abad conducted plaintiff's initial medical intake interview, but "refused to listen to Plaintiff's serious concerns about the lesion . . . ."  Plaintiff was concerned that the lesion could be basal cell carcinoma and was told by a physician's assistant at another correctional facility that he should see a dermatologist as soon as possible.  Abad, however, "did not want to hear" plaintiff's concerns and noted on the intake form that plaintiff's skin was clear.  Plaintiff nevertheless continued to voice his concerns to Abad and, on September 15, 2007, submitted a "'request to staff'" to conduct a physical examination.

Plaintiff saw Dr. Guzman on September 19, 2007, regarding the lesion on his nose.  Dr. Guzman told plaintiff to speak with Abad, who was plaintiff's "primary health care giver," and to tell Abad that "'[defendant Guzman] said to do this.'" (Doc. 22, p. 7).  Guzman also told plaintiff to contact him if he had any additional problems.

On September 21, 2007, plaintiff met with Abad for his requested physical.  Abad documented the lesion on plaintiff's nose, but "did not properly indicate the age of the lesion and . . . refused to correct her mistake . . . ."  After being confronted by plaintiff regarding the error, Abad replied "it doesn't matter anyway." When plaintiff asked to see a dermatologist, Abad told him not to "'worry so much'" and prescribed

---

[1] During the time of the events in question, plaintiff was transferred between three correctional institutions–FCI Marianna; United States Penitentiary, Atlanta ("USP Atlanta"); and Federal Correctional Institution Seagoville ("FCI Seagoville").

*Case No: 5:11cv343/MP/CJK*

a steroid cream.  (Doc. 22, p. 7).

On September 23, 2007, plaintiff again saw Dr. Guzman, who told plaintiff that the steroid cream "would not work" and that if the lesion worsened, "something else would have to be done."  Guzman gave plaintiff band-aids and antibiotic cream and instructed him to return in a month.  On October 23, 2007, "or thereabout," plaintiff asked to see Dr. Guzman but was directed to Abad.  Abad "did nothing" and told plaintiff to speak with Dr. Guzman.  On October 30, 2007, plaintiff saw Dr. Guzman, "who [also] did nothing" and told plaintiff to speak with Abad.  (Doc. 22, p. 8).  Plaintiff alleges that he sought medical assistance from Guzman and Abad over the next nine months but "was rejected time after time with nobody doing anything to help."  Then, on April 1, 2008, plaintiff was "called" to Abad's office and informed that Abad had not received any of his medical requests.

On February 15, 2008, plaintiff awoke to discover "three . . . large black floaters that obscured his vision in his left eye . . . ."  (Doc. 22, p. 8).  Plaintiff believed the condition to be a "hereditary family trait" resulting from "blood formations."  Plaintiff sought assistance from health services but was told by Nurse Hanson that if he did not have an appointment, he would not be seen.  Plaintiff claims he mailed several requests to Abad and Guzman over the next month, explaining his eye condition.  On March 20, 2008, plaintiff saw Dr. Pelt, an optician, who informed plaintiff that "everyone has floaters in their eyes" and otherwise rendered no treatment.[2]  (Doc. 22, p. 8).  On April 1, 2008, plaintiff explained his eye condition to Abad, who responded the same as Dr. Pelt, noting that plaintiff had already seen

---

[2] It is not clear from the record who referred plaintiff to Dr. Pelt.

an eye doctor.[3]

On May 30, 2008, Dr. Guzman "requested an appointment be made with an outside specialist" to examine the lesion on plaintiff's nose. (Doc. 22, p. 9). Dr. Guzman also prescribed hydrocortisone lotion and renewed plaintiff's prescriptions for aspirin, Ranitidine, Simvastatin, and Naproxen Sodium. According to plaintiff, Dr. Guzman refused to acknowledge that there was a problem with plaintiff's left eye and inaccurately documented the date on which plaintiff first presented with the lesion on his nose. (Doc. 22, pp. 9-10).

The following month, plaintiff saw Dr. Brunner, the outside specialist to whom Dr. Guzman referred him, who told plaintiff that he was "98% certain" that the lesion on plaintiff's nose was basal cell carcinoma and would require surgery. (Doc. 22, p. 10). Plaintiff "agreed" to have Dr. Brunner perform the procedure. Once Dr. Guzman read Dr. Brunner's assessment, he told plaintiff "'we will take care of this real soon!'" (Doc. 22, p. 10). Plaintiff asked Dr. Guzman to delay his pending transfer until surgery on the lesion was completed. In response, Guzman stated, "'it [is] up to Plaintiff's Case Manager to do that and not him.'" (Doc. 22, p. 10). Plaintiff's case manager later told plaintiff that Dr. Guzman had the authority to temporarily hold plaintiff's transfer for medical reasons.

On July 23, 2008, plaintiff was transferred to USP Atlanta. Shortly thereafter, on August 28, 2008, plaintiff's retina "partially detach[ed]." (Doc. 22, p. 11). Plaintiff subsequently transferred to FCI Seagoville. In response to an inquiry at Seagoville about his medical records, plaintiff heard that Clinical Director J. Capps

---

[3] In early April 2008, plaintiff complained about the medical treatment he received at FCI Marianna to Associate Warden Agnus Davis and Health Services Administrator Seay. Plaintiff alleges these complaints resulted in him being prematurely transferred to FCI Seagoville.

had found only Dr. Guzman's May 30, 2008, report and Dr. Bonnet's report,[4] but was unable to find Dr. Brunner's evaluation of the lesion on plaintiff's nose.

On October 15, 2008, plaintiff saw Dr. Joel Potasznik, an ophthalmologist who diagnosed a detached left retina. Two days later, on October 17, 2008, Dr. Marcus Allen performed retina reattachment surgery. On January 29, 2009, plaintiff underwent surgery to remove the lesion on his nose. Plaintiff avers he "has no peripheral vision [in] his left eye and very little night vision and no right eye vision whatsoever, AND has a large facial deformity in the form of [a] . . . large scar." (Doc. 22, p. 11). Plaintiff thus filed suit against the defendants asserting violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment due process rights. As recompense, plaintiff seeks $15,000,000 in compensatory damages, $15,000,000 in punitive damages, costs of the suit, reasonable attorney's fees, future medical expenses, pre and post-judgment interests and whatever further relief the court shall deem proper. (Doc. 22, p. 12).

Abad and Guzman have moved to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(6), arguing that plaintiff has failed to state a claim upon which relief can be granted. Specifically, defendants contend they were not deliberately indifferent to plaintiff's serious medical needs and did not cause his injuries. (Doc. 49, pp. 9, 15). Defendants further argue that, even if plaintiff could establish an Eighth Amendment violation, they are entitled to qualified immunity because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (Doc. 49, pp. 6-7). In response to defendants' motions, plaintiff essentially reiterates the facts set forth in his complaint. He also

---

[4] Dr. Bonnet appears to be an eye doctor who examined plaintiff at USP Atlanta.

disputes defendants' recitation of the facts and directs the court to several cases in which courts have found Eighth Amendment violations based on an inmate's serious medical condition.[5]

## ANALYSIS

The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Dismissals for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint also is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three elements. First, the plaintiff must demonstrate "an

---

[5] In addition, plaintiff, apparently in an abundance of caution, moves to exclude evidence concerning his underlying child pornography conviction. (Doc. 67, p. 20).

*Case No: 5:11cv343/MP/CJK*

Case 5:11-cv-00343-MP-CJK   Document 68   Filed 07/07/14   Page 7 of 14

Page 7 of 14

objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted). The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. In order to satisfy the final element of an Eighth Amendment claim, a plaintiff must show that the official's deliberate indifference caused his injury. *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Here, the second element of an Eighth Amendment claim is at issue. "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1319-20 (11th Cir. 2005) (quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice

actionable under state law." *Taylor*, 221 F.3d at 1258.  Indeed, simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (1991); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").  A difference of opinion over matters of medical judgment does not give rise to a constitutional claim.  *Harris*, 941 F.2d at 1505; *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[6]  Delay in providing "diagnostic care and medical treatment known to be necessary," however, can qualify as deliberate indifference, *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986), if such delay is "tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment." *Id.*  The Eleventh Circuit has found cognizable deliberate indifference claims where prison officials delayed treatment for life-threatening emergencies and in "situations

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.* at 1187. "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id*. at 1187-88.

Defendant Abad

Plaintiff has not pled facts demonstrating that Abad acted with deliberate indifference to his constitutional rights. Indeed, there is no indication that Abad was aware of an excessive risk to plaintiff's health or safety, much less that she disregarded that risk or did so in a manner that constituted unnecessary and wanton infliction of pain. To the contrary, the facts show that Abad did not consider the lesion on plaintiff's nose or the "floaters" in his eye to constitute serious medical conditions. She nevertheless treated plaintiff for the lesion and deferred to the diagnosis of a specialist regarding the "floaters."[7] Such facts do not give rise to a claim of deliberate indifference. *See Farmer*, 511 U.S. at 837; *Taylor*, 221 F.3d at 1258; *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (noting, "whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment"); *Enriquez v. Kearney*, 694. F. Supp. 2d 1282, 1296 n.12 (S.D. Fla. 2010) ("[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action."). At most, plaintiff has alleged that Abad was negligent with regard to her diagnosis and treatment of him, which is insufficient to maintain an Eighth

---

[7] For purposes of the instant motions, the court assumes plaintiff's conditions constituted serious medical needs.

Amendment claim.[8] *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Williams*, 689 F.2d at 1380. Plaintiff's Eighth Amendment claim against Abad therefore should be dismissed.

Defendant Guzman

The same result will obtain with regard to Dr. Guzman. Plaintiff alleges that upon arrival at FCI Marianna, he told Dr. Guzman about the lesion on his nose. Dr. Guzman referred plaintiff to Abad, his "primary health care giver," and told him to come back to him if there were any problems. At a later visit, Dr. Guzman informed plaintiff that the steroid cream prescribed by Abad was ineffective and ordered a different course of treatment with instructions to return in one month if the lesion did not improve. After the problem persisted, Dr. Guzman revised the course of treatment, prescribing additional medication and referring plaintiff to a specialist. Those facts do not support a claim that Dr. Guzman acted with deliberate indifference to the lesion on plaintiff's nose. Moreover, no allegation shows that Dr. Guzman was

---

[8] Plaintiff includes an "affidavit" from Dr. George Elliot Kabacy, a fellow prisoner at FCI Seagoville, with his complaint. (Doc. 22-1, pp. 57-62). In the affidavit, Dr. Kabacy challenges the course and type of treatment provided to plaintiff by the defendants. Even if Dr. Kabacy's criticisms are valid, they do not support a finding of deliberate indifference for the reasons set forth above. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Nimmons v. Aviles*, 409 F. App'x 295, 297-98 (11th Cir. 2011) ("That Nimmons later underwent a procedure on his knee by another doctor who expressed concern about the knee's prior treatment does not mandate the conclusion that Defendant acted in a constitutional sense unreasonably in treating Nimmons, especially given that Nimmons made no additional complaints to Defendant about his knee for eight months after the fall."); *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that "a simple difference in medical opinion" does not constitute deliberate indifference."). Moreover, as the government notes, Dr. Kabacy's medical license has been revoked or lapsed. (Doc. 63, p. 5).

aware of plaintiff's eye condition, much less that it posed a serious risk to plaintiff. To the contrary, plaintiff alleges that Dr. Guzman never acknowledged a problem with his eye. As with Abad, plaintiff simply challenges the sufficiency of the medical treatment rendered by Dr. Guzman, which is insufficient to establish an Eighth Amendment violation. As a result, plaintiff's Eighth Amendment claim against Dr. Guzman does not surmount even the relatively lenient bar of Rule 12(b)(6).[9]

Fifth, Sixth, and Fourteenth Amendment Claims

In addition to the Eighth Amendment claim, plaintiff alleges violations of his due process rights under the Fifth and Sixth Amendments, as well as violations of equal protection under the Fourteenth Amendment. Plaintiff, however, alleges no facts in support of these claims.

The due process clause of the Fourteenth Amendment applies only to state actors, not federal officials. *See McGuire v. Trumbo*, 137 F.3d 321, 323 (5th Cir. 1998) ("The Fourteenth Amendment, by definition, requires state action."). To the extent plaintiff attempts to assert an equal protection claim arising under the Fifth Amendment, he has not sufficiently alleged that other similarly situated inmates received more favorable treatment, much less that such favorable treatment was based on a constitutionally protect interest. *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (noting that to establish an equal protection claim, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more

---

[9] To the extent plaintiff takes issue with the failure to include Dr. Brunner's medical diagnosis in his medical records, plaintiff has put forward no facts indicating that Dr. Brunner's evaluation was omitted from his record by either defendant Abad or Guzman, or that either defendant was responsible for the proper transmission of the medical record to FCI Seagoville. Moreover, plaintiff has filed numerous medical records as exhibits to his complaint, thereby demonstrating that any omission regarding Dr. Brunner's evaluation is an isolated incident.

*Case No: 5:11cv343/MP/CJK*

favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race"). Finally, with regard to the Fifth and Sixth Amendment claims, plaintiff has not alleged that he was deprived of life, liberty, or property, as is necessary to maintain a due process claim. Instead, plaintiff alleges medical malpractice.[10]

Qualified Immunity

Because plaintiff has failed to establish a constitutional deprivation, the defendants are *ipso facto* entitled to qualified immunity. The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999). Qualified immunity shields government officials from individual capacity suits against them for acts that do not violate a clearly established constitutional right of which a reasonable person would be aware given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730 (2002); *Conn v. Gabbert,* 526 U.S. 286 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800(1982)). Qualified immunity ensures that individuals can reasonably anticipate when their conduct may give rise to liability. To that end, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270 (1997)). A public official seeking qualified immunity "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)

---

[10] Notably, in his response to defendant Guzman's motion to dismiss, plaintiff voluntarily dismisses his equal protection claims under the Fourteenth Amendment and admits that "he was not denied due process" with respect to his grievances. (Doc. 67, p. 19).

(internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

Courts apply a two-pronged test when evaluating a claim of qualified immunity: (1) whether, on the facts alleged, a constitutional right was violated; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). The court may exercise its discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223 (2009). The court may grant qualified immunity if the plaintiff fails to carry his burden on either of the two prongs. *See, e.g., id.* at 822-23 (evaluating only *Saucier*'s second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established). Here, the defendants unquestionably were acting within the scope of their discretionary authority when treating plaintiff; moreover, as discussed above, plaintiff has failed to sufficiently allege that his constitutional rights were violated. The defendants therefore are entitled to qualified immunity.

Accordingly, it is respectfully RECOMMENDED:

1. That the motions to dismiss (docs. 49, 63) be GRANTED.

2. That defendants Abad and Guzman be DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

3. That the clerk be directed to close the file.

At Pensacola, Florida this 7th day of July, 2014.

*/s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).